# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

DOZIER COX,                                :

      Petitioner,                     :

vs.                                        :            CA 14-0088-CG-C

CYNTHIA STEWART,                           :

      Respondent.

## REPORT AND RECOMMENDATION

Dozier Cox—a state prisoner in the custody of the respondent when he
instituted this action but who has since been paroled (Doc. 10)—has petitioned this
Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Cox is challenging
the validity of his April 22, 2008, unlawful distribution of a controlled substance
conviction in the Circuit Court of Marengo County, Alabama; he was sentenced to
twenty (20) years imprisonment on May 27, 2008. The Alabama Court of Criminal
Appeals affirmed Cox's conviction and sentence by unpublished memorandum
opinion issued on April 24, 2009. *See Cox v. State,* 51 So.3d 405 (Ala. Crim. App. 2009)
(table). By his own admission, Cox did not file an application for rehearing or a
petition for writ of certiorari. (Doc. 4, at 3.)[1] Cox filed a Rule 32 petition in the Circuit
Court of Marengo County, Alabama collaterally attacking his conviction and sentence

---

[1]      The Alabama Court of Criminal Appeals issued a certificate of final judgment of
affirmance on May 13, 2009. (Doc. 9, Exhibit L, at 2.)

on July 30, 2009. (Doc. 9, Exhibit F, at 15.) On March 2, 2011, Cox filed an amended Rule 32 petition (Doc. 9, Exhibit G, at 16) and, on August 30, 2011, a motion to again amend his petition (Doc. 9, Exhibit H, at 4).[2] Although the trial court issued an order on August 28, 2012, "[b]ecause it was unclear . . . whether the court intended its . . . order to be a final judgment disposing of all of Cox's claims in his original petition and two amendments," the Alabama Court of Criminal Appeals remanded the case to the trial court for clarification. (Doc. 9, Exhibit L, at 3 & 4.) On remand, the Marengo County Circuit Court stated that its order of August 28, 2012 was intended as a final judgment of all of Cox's claims (Doc. 9, Exhibit I, at 1); therefore, the Alabama Court of Criminal Appeals addressed the issues raised by Cox on appeal and affirmed the trial court's dismissal of the Rule 32 petition (Doc. 9, Exhibit L, at 4-19). Cox's petition for writ of certiorari to the Alabama Supreme Court was denied without opinion and the certificate of final judgment of affirmance was entered on February 14, 2014. (Doc. 9, Exhibit N.)

In his petition before this Court, initially filed on February 24, 2014 (Doc. 1, at 15), Cox raises the following issues which he claims entitle him to federal habeas corpus relief: (1) the trial court lacked jurisdiction to render judgment because the jury was selected outside of his presence; (2) his conviction was obtained by the State's use of misleading or perjured testimony; (3) his conviction was obtained in violation of his

---

[2]    During this period of time, several mandamus petitions filed by Cox in the Alabama Court of Criminal Appeals were dismissed or denied. *Compare Ex parte Cox,* 84 So.3d 1029 (Ala.Crim.App. Aug. 9, 2010) (table) *with Cox v. State,* 92 So.3d 822 (Ala.Crim.App. Oct. 1, 2010) (table) and *Ex parte Cox,* 97 So.3d 199 (Ala.Crim.App. Jan. 5, 2011) (table).

Sixth Amendment right to confront his accusers when Atkins was allowed to testify about what the confidential informant told him; and (4) the trial court failed to follow the procedural requirements of Ala.R.Crim.P. 19.1 by not reading the charge to the jury and his plea to that charge. (Doc. 4, at 7-9.)

This cause is before the Court on the petition (Doc. 4), respondent's answer with attachments (*see* Doc. 9), and petitioner's response (Doc. 12 ("Here comes Dozier Cox . . . to inform the court that the habeas corpus petition filed pursuant to 28 U.S.C. § 2254 shall remain viable.")) to the undersigned's July 24, 2014 order regarding whether his petition remained viable in light of his release on parole (*see* Doc. 11). A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* ___ U.S. ___, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## FINDINGS OF FACT

Beginning in February or March of 2006 and continuing for eight to nine months, an undercover drug operation was conducted by law enforcement officials in Marengo County targeting street-level drug dealers. (Doc. 9, Exhibit P, T.T. 39-40.) Phillip Myers, then with the Marengo County Sheriff's Department, was contacted by the Chief of Police of Demopolis, Alabama and Investigator Zachary Fluker and given a list of known or suspected drug dealers to focus upon during the course of the operation. (*See id.* at 38-41.) One of the names on the list was that of the petitioner, Dozier Cox. (*Id.* at 41; *see also id.* ("The primary complaint was from the car wash located on East Pettus Street behind the Taco Bell area.").)

In connection with the undercover investigation, Investigator Fluker had recruited an informant by the name of Fred Campbell to make controlled drug purchases. (*See id.* at 43.) In addition, Myers sought the assistance of an officer then employed by the Greensboro Police Department, Cleophus Atkins, to accompany the confidential informant to Dozier Cox's car wash in Demopolis in an attempt to consummate a purchase of drugs. (*Compare id.* at 44 *with id.* at 12-15). Prior to Officer Atkins and Campbell going to Cox's car wash on March 10, 2006, Campbell's body and the vehicle that was taken to the car wash were searched for drugs and money. (*Id.* at 33-34 & 52.) After the search of Campbell and the car, Campbell was given money to make the drug buy (*id.* at 45) and Officer Atkins and Campbell drove to the car wash (*see id.* at 15). Upon arriving at the car wash, Campbell had Atkins stay in the car while he approached Cox. (*Id.* at 17 ("[T]he informant told me to stay inside because the

people there that were doing the selling did not exactly know me.").) From the car, Officer Atkins observed Campbell hand the money he had been given to Cox and then the two men went inside a building and following a few minutes of conversation inside, Campbell returned to the vehicle and handed Atkins a piece of tissue paper/napkin containing a substance the officer believed to be crack cocaine. (*Id.* at 18-19.)[3] Atkins and Campbell left the car wash and met up with Myers; Atkins gave Myers the substance. (*Id.* at 20.) The substance field-tested positive for the presence of cocaine (*id.* at 55) and a forensics report identified the substance as .44 grams of cocaine base (*id.* at 68).

On April 22, 2008, the jury returned a verdict finding Cox guilty of unlawful distribution of a controlled substance, as charged in the indictment. (*Id.* at 104; *see also id.* at 92-93 (in charging the jury regarding the law, the trial judge read the indictment and informed the jury that Cox had entered a not guilty plea to the charge).) On May 27, 2008, Cox was sentenced to a twenty-year term of imprisonment. (*See* Doc. 9, Exhibit P, Sentencing Transcript, at 6.) The Alabama Court of Criminal Appeals affirmed Cox's conviction and sentence by unpublished memorandum opinion issued on April 24, 2009. *See Cox v. State,* 51 So.3d 405 (Ala. Crim. App. 2009) (table).[4] Cox did

---

[3]     During the trial, Officer Atkins specifically identified Cox as the person who Campbell made contact with on March 10, 2006. (*Id.* at 85-86.)

[4]     "The appellant, pro se, has submitted four points or issues for this court to consider. All of Cox's claims are refuted by the record, or are legally or factually insufficient, or are raised for the first time on appeal. A review of the record reveals no further issue which warrants appellate review. Therefore, the judgment of the trial court is affirmed." (Doc. 9, Exhibit D, at 2.)

not file an application for rehearing or a petition for writ of certiorari (Doc. 4, at 3.); therefore, the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance on May 13, 2009 (Doc. 9, Exhibit L, at 2).

Cox filed a Rule 32 petition in the Circuit Court of Marengo County, Alabama collaterally attacking his conviction and sentence on July 30, 2009. (Doc. 9, Exhibit F, at 15.) On March 2, 2011, Cox filed an amended Rule 32 petition (Doc. 9, Exhibit G, at 16) and on August 30, 2011, a motion to again amend his petition (Doc. 9, Exhibit H, at 4). Although the trial court entered an order on August 28, 2012, "[b]ecause it was unclear . . . whether the court intended . . . its order to be a final judgment disposing of all of Cox's claims in his original petition and two amendments," the Alabama Court of Criminal Appeals remanded the case to the trial court for clarification. (Doc. 9, Exhibit L, at 3 & 4.) On remand, the Marengo County Circuit Court stated that its order of August 28, 2012 was intended as a final judgment of all of Cox's claims (Doc. 9, Exhibit I, at 1); therefore, the Alabama Court of Criminal Appeals addressed the issues raised by Cox on appeal (Doc. 9, Exhibit L, at 4-19).

> Cox argued in his petition that the trial court lacked jurisdiction to render the judgment or to impose the sentence because, he said, "the court allowed the jury to be selected without Cox being present." (C. 37.)

> .     .     .

> Cox's claim in his petition appears to be based entirely on the record submitted to this Court on direct appeal from Cox's conviction and sentence. In his petition, Cox alleged: "Nowhere in the record reveals Cox's presence on the day of jury selection, there's nothing in the record to show that Cox was present and able to exercise his right to be heard at jury selection. The record is completely devoid of Cox's presence at jury selection." (C. 37-38.) Cox argued in his petition that the first thing in the record is the following statement by the trial judge: "Good morning

ladies and gentlemen of the jury. I need to ask you has anything happened since you were selected on yesterday." (C. 37.) This statement, Cox argued, indicates that the jury was selected the day before the trial began on April 22, 2008, and that the record does not reflect his presence that day, i.e., on April 21, 2008. However, "a court reporter has never been required to transcribe bench conferences or to record the striking of the jury unless requested to do so." Boyd v. State, 746 So.2d 364, 382 (Ala. Crim. App. 1999). . . . Thus, contrary to Cox's contention, the mere fact that voir dire and jury selection were not transcribed and included in the record on appeal does not indicate, or even suggest, that Cox was not present during that time.

More importantly, however, is that Cox's claim in his petition is that he was not present during any part of the jury-selection process. He specifically alleged in his petition that "the only time he saw the jury to decide his case was when they had already been selected and brought into the courtroom to hear the evidence." (C. 69.) In its August 28, 2012, order summarily dismissing Cox's petition, the circuit court addressed this claim, in pertinent part, as follows:

> "[T]he record clearly reveals that Petitioner is mistaken or just not telling the truth when he alleges that a jury was selected without his knowledge or presence. The Court requested a brief excerpt from the voir dire proceedings from the Official Court Reporter, Margo Bryan. The voir dire proceedings were held on April 21, 2008. The record, attached as Exhibit 'A' Page 3 clearly reveals Mr. Cox's presence when the Court asked the following question during the proceedings:
>
> > "The Court: Mr. Cox, would you please stand. Anybody on the panel related by blood or marriage to this defendant? Thank you, Mr. Cox. Record Page 3.
> >
> > "Therefore, the allegation of Mr. Cox that he was not present nor did he have knowledge of the jury selection process is simply not true. This allegation is without merit and Petitioner's request for relief is denied."

(C. 13.) The circuit court's findings are supported by the portion of the transcript of voir dire that the court attached to its order. It is clear that Cox was present during voir dire on April 21, 2008, and his claim in his

petition that he never saw the jury or knew of the selection of the jury until he arrived in court on April 22, 2008, is clearly meritless.

.    .    .

Second, Cox alleged in his petition that witness Cleophus Atkins misled the jury when he testified that there was no specific target of the drug investigation and the State failed to correct that misleading testimony once Agent Phillip Myers testified that he had shown Atkins a photograph of Cox before the transaction, thus establishing that Cox was, in fact, the target of the operation. Cox also argued that Atkins "misled the jury to believe that he witnessed the transaction occur, it was later revealed that the car wash windows and door was tinted mirror tint so it was impossible for Officer Atkins to witness such." (C. 38-39.) Finally, Cox alleged that the State improperly misled the jury into believing that the substance he sold to the confidential informant was "crack cocaine" when, he claimed, "the certificate of analysis clearly conflicts [with] that testimony. The substance has not been proven to be crack." (C. 39.)

At trial, Cleophus Atkins testified that at the time of trial he was employed by the State of Alabama investigating medicaid fraud, but that he had previously been a sergeant with the Greensboro Police Department in charge of narcotics operations. Atkins said that in March 2006, when he was in narcotics, he was approached by Alabama Alcohol Beverage Control Board ("ABC" Board) agent Phillip Myers about participating in undercover narcotics purchases in Demopolis. Atkins said that he worked with Agent Myers for about two days. When asked if he had a specific target "going into this operation," Atkins said that "we just basically went into the area, drug areas. It wasn't targeting anybody, but it was just as far as purchased drug buys, he [a confidential informant] said he knew a couple of people in the areas that could possibly sell him drugs." (Record on Direct Appeal "RDA," R. 14.) One of the people from whom the confidential informant indicated that he could purchase narcotics was Cox.

On March 10, 2006, Atkins met with Agent Myers, Investigator Zachary Fluker with the Demopolis Police Department, and confidential informant Fred Campbell. Campbell was searched and he had no drugs or money on his person. Atkins said that he and Campbell drove to a car wash in Demopolis "to purchase narcotics" from Cox. (R. 15.) Atkins said that he did not know Cox personally, but that Campbell identified him once they arrived at the car wash. Once at the car wash, Campbell told Atkins to stay in the vehicle "because the people there that were doing the selling did not exactly know" Atkins. (RDA, R. 17.) Campbell then

exited the vehicle and made contact with Cox. Campbell handed Cox $50 in cash that Atkins had given to Campbell, and Campbell and Cox then went inside the car-wash building. Atkins testified that from "[t]he area where [he] was sitting, [he] could see" inside of the building and that he saw Campbell and Cox "talking" and possibly "doing some type of transaction" (RDA, R. 19), but that he "didn't physically see" Cox hand Campbell crack cocaine. (RDA, R. 30.) When recalled by Cox's counsel to testify for the defense, Atkins identified pictures of the car-wash building, and responded in the affirmative when asked by defense counsel if "the glass [on the building] appears to be somewhat mirrored." (RDA, R. 83.) He clarified, however, that he could, in fact, see through the glass. Atkins could not hear the conversation between Campbell and Cox, but Atkins said that Campbell was" wired with an audio device" and that Agent Myers could hear the transaction. (RDA, R. 20.)

After the transaction, Campbell came back outside with a napkin in his hand that contained what appeared to be crack cocaine. Atkins and Campbell then left the car wash, met with Agent Myers, and turned over the crack cocaine purchased from Cox. When he met with Agent Myers after the transaction, Atkins said, Agent Myers showed him photographs "of different people" and asked him to identify who had sold the crack cocaine to Campbell. (RDA, R. 32.) Atkins identified Cox.

Agent Myers testified that he was involved in a narcotics operation in all of Marengo County, including the Demopolis area, beginning in February or March of 2006 and continuing through the end of 2006. With respect to the Demopolis area, Agent Myers said that the ABC Board had been contacted by the chief of police in Demopolis, and that the operation was designed to "target [] street level dealers based on numerous complaints." (RDA, R. 40.) According to Agent Myers, the Demopolis chief of police provided Inv[estigator] Fluker with a list of known offenders in the area and people about whom he had received complaints about selling narcotics. Cox was on the list. Specifically, there had been a complaint that Cox was selling narcotics from a car wash in Demopolis.

Agent Myers asked Atkins to assist in a portion of the Marengo[]County operation. On March 10, 2006, Agent Myers met with Atkins, Inv. Fluker, and Campbell. Agent Myers said that he knew at that time "where we were going on that day," i.e., to purchase narcotics from Cox. (RDA, R. 43.) However, Agent Myers testified that there was no intention that day to arrest Cox even if Campbell was successful in purchasing narcotics from Cox because they "wanted to continue [the] operation and catch as many people as we could," and to arrest Cox

immediately following the transaction would have ended the operation because both the undercover officer and the informant could not have continued purchasing narcotics. (RDA, R. 46.) Agent Myers testified that there were, in fact, other people who were arrested as a result of the countywide operation.

Agent Myers testified that Campbell was searched and that he had no drugs or other contraband on his person. A digital transmitter, or wire, was placed on Campbell's person, and Agent Myers and Inv. Fluker were able to listen to the transaction with Cox while it was taking place. The recording of the transaction was introduced into evidence by the State. When Atkins and Campbell returned to Agent Myers's location after the transaction, they gave Agent Myers a napkin containing what appeared to be crack cocaine. Agent Myers conducted a field test on the substance and it tested positive for cocaine. Agent Myers later transported the substance to the Alabama Department of Forensic Sciences ("DFS") for testing. A certificate of analysis from the DFS was introduced into evidence; the certificate stated that the substance had been identified as ".44 grams of cocaine base." (RDA, R. 68.)

Agent Myers said that he did not believe that Atkins knew Cox before the transaction on March 10, 2006, but that before Atkins and Campbell left to conduct the purchase, he showed Atkins a photograph of Cox and told Atkins that Cox was the target "we hoped to purchase crack cocaine from today." (RDA, R. 62.) After the transaction took place, Agent Myers said, he again showed Atkins a photograph of Cox and Atkins identified Cox as the person from whom Campbell had purchased the crack cocaine.

Cox's claim that Atkins misled the jury when he testified that there was no specific target of the drug investigation and that the State failed to correct that misleading testimony is directly refuted by the record. As can be seen from the above statement of facts, Atkins's testimony and Agent Myers's testimony were consistent. Both testified that there was no specific target for the countywide operation, but that street-level dealers in general were what law enforcement was after. Both also testified that Cox was the specific target on March 10, 2006. Atkins did not mislead the jury in this regard.

Cox's claim that Atkins misled the jury to believe that he had witnessed the transaction when, in fact, "the car wash windows and door was tinted mirror tint so it [would have been] impossible for" Atkins to have seen the transaction is also directly refuted by the record. (C. 38.) Although defense counsel introduced into evidence photographs of the

building at the car wash which Atkins said appeared to suggest that the glass may have been mirrored, no testimony was presented that the glass was tinted, as Cox argued, and Atkins was clear throughout his testimony that he could see through the glass inside the building. Therefore, Atkins did not mislead the jury in this regard.

Finally, Cox's claim that the State improperly misled the jury into believing that the substance he sold to the confidential informant was crack cocaine when, he claimed, "the certificate of analysis clearly conflicts [with] that testimony," is also directly refuted by the record. The certificate of analysis specifically states that the "solid material revealed the presence of cocaine (base) [a C-II controlled substance]. Weight in grams – 0.44." (RDA, C. 41.) The certificate of analysis established that the substance Cox sold to Campbell was cocaine. Merely because the certificate [of] analysis did not specifically identify the substance as "crack" is irrelevant. The only thing the State was required to prove was that the substance sold by Cox contained cocaine. The State proved that through the certificate of analysis.

[]

Third, Cox alleged in his petition that he was denied his right to confront his accusers when Atkins was permitted to testify to what the confidential informant told him.

.        .        .

Cox . . . did not identify in his petition what the confidential informant told Atkins that Atkins testified to at trial. Rather, he made a bare allegation that Atkins testified "to what the [confidential informant] said." (C. 40.) Such a bare allegation is not sufficient to indicate a violation of Cox's right to confrontation. Rule 32.3, Ala.R.Crim.P., provides that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala.R.Crim.P., provides that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." . . .

Moreover, after reviewing the record from Cox's direct appeal, we can find no harm to Cox from the trial court allowing Atkins to testify that Campbell told him to stay in the car before the transaction and that

Campbell identified Cox to Atkins when they arrived at the car wash – the only two instances in Atkins's testimony that reflect something that Campbell said to Atkins. Therefore, even if there was error in Atkins's testimony in this regard, that error was harmless and Cox is due no relief.

[]

Finally, Cox alleged in his petition that the trial court erred "in failing to read the charge to the jury and to state his plea as required" (C. 40), and that his trial counsel was ineffective for not objecting to the trial court's alleged failure to read the charge to the jury and to inform the jury of his plea.

However, the record reflects that the trial court did read the indictment to the jury and did inform the jury of Cox's plea of not guilty during its final oral charge. Specifically, the court stated:

> "The indictment in this case reads as follows: 'The Grand Jury of said county charged that before the finding of this indictment, Dozier Cox, whose name is otherwise unknown to the Grand Jury, did on or about March 10, 2006, unlawfully sell, furnish, give away, manufacture, deliver, or distribute a controlled substance, to wit, 0.44 grams of cocaine in violation of Section 13A-12-211 of the Code of Alabama against the peace and dignity of the State of Alabama. Gregory S. Griggers, District Attorney 17th Judicial Circuit.["]

> "Ladies and gentlemen, when this indictment was filed into court, the defendant, as he had a right to do, filed a plea of not guilty. That plea casts the burden of proof on the State of Alabama to convince the jury beyond a reasonable doubt that the defendant is guilty as charged in the indictment."

(RDA, R. 92-93.) Because the trial court did read the charge to the jury and did inform the jury of Cox's not-guilty plea, any objection by Cox's trial counsel that this was not done would have been baseless and "counsel could not be ineffective for failing to raise a baseless objection." Bearden v. State, 825 So.2d 868, 872 (Ala. Crim. App. 2001).

.    .    .

12

Based on the foregoing, the judgment of the circuit court is affirmed.

(Doc. 9, Exhibit L, at 6, 10-11, 12-16, 16, 16-17, 17, 17-18 & 19 (two hyphens omitted).) Cox's petition for writ of certiorari to the Alabama Supreme Court was denied without opinion[5] and the certificate of final judgment of affirmance was entered on February 14, 2014. (Doc. 9, Exhibit N.)

As aforesaid, in his petition before this Court, initially filed on February 24, 2014 (Doc. 1, at 15), Cox raises the following issues which he claims entitle him to federal habeas corpus relief: (1) the trial court lacked jurisdiction to render judgment because the jury was selected outside of his presence; (2) his conviction was obtained by the State's use of misleading or perjured testimony; (3) his conviction was obtained in violation of his Sixth Amendment right to confront his accusers when Atkins was allowed to testify about what the confidential informant told him; and (4) the trial court failed to follow the procedural requirements of Ala.R.Crim.P. 19.1 by not reading the charge to the jury and his plea to that charge. (Doc. 4, at 7-9.) In her answer, the respondent contends that this Court is procedurally barred from reaching the merits of petitioner's first claim (Doc. 9, at 5) and that the remaining three claims have no merit or, in the case of the fourth claim, the claim is not cognizable on federal habeas review.

---

[5] In his petition for writ of certiorari (Doc. 9, Exhibit M), Cox did not raise this issue directly—as he does in the instant petition—but, instead, his sole contention was that his "attorney was ineffective" in failing to "ensure Cox's presen[ce] and participation in the jury selection process." (*Id*. at 2.)

## CONCLUSIONS OF LAW

A.     **Procedural Default Doctrine**.

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .    .    .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to

rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*,[__ U.S., at __, 111 S.Ct., at 2559], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances

> when a constitutional violation probably has caused the conviction of one
> innocent of the crime. We have described this class of cases as implicating
> a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991)

(internal quotation marks and citations omitted).

In her answer, respondent asserts that petitioner's first claim raised in the petition (lack of jurisdiction due to his lack of presence during jury selection) is procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's failure to raise this claim to Alabama's highest court in the petition for writ of certiorari (*see* Doc. 9, at 4-5). Instead of raising this claim in the manner asserted in the instant habeas corpus petition, respondent argues that Cox raised this claim solely in the context of ineffective assistance of counsel in his petition for writ of certiorari to the Alabama Supreme Court (*compare id. with* Doc. 9, Exhibit M, at 2 (petitioner asserted in his petition for writ of certiorari that his trial attorney provided ineffective assistance in failing to ensure his presence and participation in the jury selection process)).

It is clear to the undersigned that Cox has procedurally defaulted this claim based upon the reason previously identified. More specifically, petitioner did not raise this claim in the context he seeks to raise it here when he filed his petition for writ of certiorari to the Alabama Supreme Court. *Cf. Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("[T]here is no doubt that Alabama's discretionary review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002). Thus, this Court is procedurally

barred from reaching the merits of this claim pursuant to *Boerckel, supra*, 526 U.S. at 848, 119 S.Ct. at 1734 (a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has not properly presented those claims and, therefore, has procedurally defaulted same), unless petitioner can establish that either the cause and prejudice or fundamental miscarriage of justice exception is applicable to his case, *Smith, supra,* 256 F.3d at 1138.

Petitioner has filed no response to the respondent's answer in the three months since the answer was filed. (*Compare* Doc. 9 *with* Docket Sheet.) Accordingly, Cox has established neither cause nor prejudice for his procedural default of this claim.

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Cox to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Cox has not come forward with any new reliable evidence that establishes his actual innocence of unlawful distribution of a controlled substance, the crime for which he was convicted in the Circuit Court of Marengo County, Alabama

on April 22, 2008. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.[6]

**B.** **Merits Review of Claims Raised by Cox**.

In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,* ___ U.S. , 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary, Department of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[7]), *cert. denied,* ___ U.S. ___, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).[8]

---

[6]     This claim also has no merit. As reflected in the transcript of the *voir dire* proceedings, Cox was present during jury selection. (Doc. 9, Exhibit I, Attached Voir Dire Proceedings, at 3 ("THE COURT: Mr. Cox, would you please stand. Anybody on the **panel** related by blood or marriage to this defendant? Thank you, Mr. Cox.").) Accordingly, Cox's argument in this regard is specious.

[7]     As amended, § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(Continued)

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see*

*Bottoson  v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a state court decision

involves an unreasonable application of Supreme Court precedent 'if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a

new context where it should apply.'"), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151

L.Ed.2d 270 (2001).

"A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227, 1247 (11th Cir. 2009) . . . . A state court decision involves an unreasonable application of federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's

---

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

·      The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putnam v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections,* 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied,* ___ U.S. ___, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011).

1.    **State's Alleged Use of Perjured Testimony**.    Cox contends that his conviction was obtained by the State's use of misleading or perjured testimony. (Doc. 4, at 7.) Specifically, Cox contends that Atkins testified that he was not a target of the investigation. (*Id.*)

Cox raised this claim on collateral review—along with other similar claims—and the Alabama Court of Criminal Appeals rejected this claim. (*See* Doc. 9, Exhibit L, at 15; *see also id.* at 12-15.)

> Cox's claim that Atkins misled the jury when he testified that there was no specific target of the drug investigation and that the State failed to correct that misleading testimony is directly refuted by the record. As can be seen from the above statement of facts, Atkins's testimony and Agent Myers's testimony were consistent. Both testified that there was no specific target for the countywide operation, but that street-level dealers in general were what law enforcement was after. Both also testified that Cox was the specific target on March 10, 2006. Atkins did not mislead the jury in this regard.

(*Id.* at 15.)

There can be little doubt that "[a] conviction obtained through the knowing use of perjured testimony is fundamentally unfair and a violation of due process." *Malmsberry v. Secretary, Department of Corrections,* 2012 WL 834120, *8 (M.D. Fla. Mar. 13, 2012),*citing *United States v. Bagley,* 473 U.S. 667, 677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

A petitioner can establish a violation by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony,' and (2) there is a reasonable probability that the perjured testimony could have affected the judgment." *United States v. Elso,* 364 F. App'x 595, 599 (11th Cir. 2010) (quoting *Davis v. Terry,* 465 F.3d 1249, 1253 (11th Cir. 2006)). A petition must show that (1) the statements were "actually" false, (2) the statements were material, and (3) the prosecution knew they were false. *Id.*

*Malmsberry,* at *8. As recognized in *Johnson v. Holt,* 2007 WL 1697011 (M.D. Ala. Jun. 11, 2007), it is "not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *Id.* at *15 (internal quotation marks and citations omitted).

Thus, the mere fact that the testimony of one witness contradicted that of other witnesses does not amount to a showing of perjury nor does it demonstrate that the prosecution knowingly presented false testimony to the jury. [*United States v.*] *Michael,* 17 F.3d [ ,] 1385 [(   )]; *United States v. Lopez,* 985 F.2d 520, 524 (11th Cir. 1993). Additionally, neither inconsistencies nor conflicts in statements given or testimony provided by a particular witness establishes that such accounts were perjured and that the government knowingly used perjured testimony. *Michael, supra.*

*Id.*

In addressing Cox's various claims of perjury—including the specific challenge made in the instant petition—the decision of the Alabama Court of Criminal Appeals does not make any mention of *Bagley* or *Giglio*; however, the appellate court specifically found that Atkins' "target" testimony was not perjurious. And, upon a thorough review of this case, the undersigned recommends that the Court find that the implicit decision—implicit given the clear finding of no perjury—of the Alabama Court of Criminal Appeals that the prosecutor did not knowingly elicit false testimony from any witness was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the

evidence presented.[*] Accordingly, Cox is not entitled to habeas relief on the basis of this claim.

       **2.**     <u>**Denial of Sixth Amendment Right to Confront His Accusers.**</u> Petitioner argues that he was deprived of his Sixth Amendment right to confront his accusers inasmuch as Atkins was allowed to testify that the confidential informant, Fred Campbell, "told him that Cox sold him the drugs." (Doc. 4, at 8.) Again, petitioner raised the general claim of being denied the right to confront his accusers on collateral review in the state courts; however, because Cox failed to describe the specific problem(s) with Atkins' testimony, the Alabama Court of Criminal Appeals was left to guess regarding the specifics of petitioner's constitutional claim. (*See* Doc. 9, Exhibit L, at 17 ("'A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.' . . . [A]fter reviewing the record from Cox's direct appeal, we can find no harm to Cox from the trial court allowing Atkins to testify that Campbell told him to stay in the car before the transaction and that Campbell identified Cox to Atkins when they arrived at the car wash – the only two instances in Atkins's testimony that reflect something that Campbell said to Atkins. Therefore, even if there was error in Atkins's testimony in this regard, that error was harmless and Cox is due no relief.").)

       The Sixth Amendment's Confrontation Clause "affords the accused the right 'to be confronted with the witnesses against him.'" *Dean v. Crosby*, 2009 WL 210706, *8

---

[*]     Additionally, the undersigned notes that not only has Cox failed to establish that Atkins' "target" testimony was "actually" false, he has not shown how such testimony was material or that the prosecutor knew such testimony was false. *See Malmsberry, supra,* at *8 ("[T]he mere fact that the testimony of one witness contradicts that of other witnesses does not amount to a showing of perjury nor does it demonstrate that the prosecution knowingly presented false testimony to the jury.").

(M.D. Fla. Jan. 28, 2009), quoting U.S. Const. amend. VI; *see also Secretary, Florida Dep't of Corrections v. Baker,* 406 Fed.Appx. 416, 423 (11th Cir. Dec. 27, 2010) ("The Confrontation Clause guarantees the defendant the opportunity to cross-examine the witnesses against him.").

> The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. The Eleventh Circuit has held that statements by an officer concerning information received during his investigation which amounts to substantive evidence of a defendant's guilt violates the Confrontation Clause.

*Dean, supra* (internal citations omitted). Moreover, in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct.1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Sixth Amendment operates to exclude only "testimonial" hearsay of a declarant who is unavailable at trial and who the defendant had no prior opportunity to cross-examine. *Id.* at 68, 124 S.Ct. at 1374.

Cox specifically avers in the instant petition that Atkins was allowed to testify that the confidential informant, Fred Campbell, "told him that Cox sold him the drugs." (Doc. 4, at 8.) This is simply untrue. The undersigned has read the entire transcript of Cox's trial and nowhere during the course of any of Atkins' trial testimony did Atkins state that Fred Campbell "told him that Cox sold him the drugs." Rather, it was Atkins' clear and consistent testimony that he witnessed Campbell give Cox $50.00, enter a building with Cox for further discourse, and exit the building and return to the vehicle with a napkin containing what the officer suspected was crack cocaine. Thus, Cox's argument in this regard has no factual foundation or legal import.

   3.   **Alleged Failure of Trial Court to Read the Indictment and Cox's Plea to the Charge to the Jury**.   Petitioner's final claim is that the trial court failed to read the indictment, and his plea to the charge, to the jury. This claim is not only wholly without

merit, as correctly determined by the Alabama Court of Criminal Appeals (*compare* Doc. 9, Exhibit L, at 17-18 *with* Doc. 9, Exhibit P, T.T. 92-93 (trial court read indictment to jury and informed the jury that Cox had entered a not guilty plea to the charge)), it is a claim that is simply not cognizable on federal habeas corpus review. *Compare Carrizales v. Wainwright,* 699 F.2d 1053, 1054-1055 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes.") *with Rodak v. Secretary, Dept. of Corrections,* 2013 WL 4780132, *6 (N.D. Fla. Sept. 5, 2013) ("A habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. . . . A federal writ of habeas corpus is only available in cases of federal constitutional error.").

## C. Certificate of Appealability.

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied partly on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct

in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), but mostly on the merits of underlying constitutional claims, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as petitioner has defaulted the first claim he wishes this Court to address pursuant to *O'Sullivan v. Boerckel, supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the first claim of the instant petition or that Cox should be allowed to proceed further regarding this claim, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). With respect to all other claims raised by Cox, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or that any

of the remaining issues presented are adequate to deserve encouragement to proceed further.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report & recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 4), should be **DENIED**. Cox is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal in forma pauperis.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent,

"the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 16th day of September, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**